UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————

№ 09-CV-1536 (JFB) (AKT)

———————————————

NSI INTERNATIONAL, INC.,

Plaintiff,

VERSUS

MONA MUSTAFA,

Defendant.

———————————————

**MEMORANDUM AND ORDER**
August 20, 2009

———————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff NSI International, Inc. ("NSI" or "plaintiff") commenced this action on March 18, 2009 in the Supreme Court of the State of New York, Suffolk County, alleging that defendant Mona Mustafa ("Mustafa" or "defendant") breached a settlement agreement that she had reached with plaintiff in connection with the release of certain claims related to her former employment at NSI. On April 14, 2009, Mustafa filed a notice of removal to this Court, premised on both federal question and diversity jurisdiction, and further requested, in the notice of removal, that this case be transferred to the Northern District of Illinois, pursuant to 28 U.S.C. § 1404. On April 27, 2009, plaintiff filed a motion to remand to state court, on the basis that this Court lacks subject matter jurisdiction over this action.

For the reasons that follow, the Court concludes that Mustafa has sufficiently sustained her burden of demonstrating a basis for federal jurisdiction in this case. Accordingly, plaintiff's motion to remand is denied. As for defendant's motion to transfer venue, the parties will participate in a telephone pre-motion conference on September 1, 2009 at 4:00 p.m. to set a briefing schedule for a formal motion, in accordance with this Court's individual rules.

I. BACKGROUND

On March 18, 2008, plaintiff filed this lawsuit against Mustafa in the Supreme Court of the State of New York, County of Suffolk. Plaintiff NSI, a corporation engaged in the sale of children's craft activity kits and science products, is organized and existing under the laws of Delaware and maintains its

principal place of business in Farmingdale, New York. (Compl. ¶ 1.) According to the complaint, Mustafa was an at-will employee at NSI employed as a Vice President, Regional Sales Manager from June 6, 2007 until December 12, 2008. (Compl.¶¶ 5-6.) The complaint asserts that on December 12, 2008, NSI terminated Mustafa's employment for poor work performance. (Compl. ¶ 6.)

Thereafter, Mustafa, by her attorney, sent correspondence to NSI asserting that Mustafa had legal claims against NSI, including a claim for unpaid severance pay pursuant to an alleged employment contract and employment discrimination. (Compl. ¶ 7.) Mustafa and NSI, after engaging in numerous discussions in an attempt to resolve such claims, allegedly entered into an oral agreement on January 27, 2009. (Compl. ¶ 9.) This alleged oral agreement provided that NSI would pay Mustafa $16,000 in four monthly installments of $4,000 and that NSI would produce a neutral letter of reference for Mustafa, in exchange for Mustafa's release of any and all claims against NSI (the "settlement agreement"). (Compl. ¶¶ 8-9.) According to the complaint, over the next two weeks, the parties reviewed and revised written drafts to memorialize the terms of the settlement agreement. (Compl. ¶ 10.) On February 11, 2009, Mustafa allegedly wrote to NSI, stating that, *inter alia*, the agreement "[l]ooks perfect." (Compl. ¶ 11.)

On February 16, 2009, Mustafa informed NSI that she was rescinding her agreement to settle. (Compl. ¶ 12.) On February 26, 2009, Mustafa informed NSI that she had filed a complaint with an administrative agency. (Compl. ¶ 14.) On March 18, 2009, NSI commenced this lawsuit against Mustafa in the Supreme Court of the State of New York, County of Suffolk, alleging breach of contract and seeking a declaratory judgment.

On April 14, 2009, defendant removed the instant action to this Court and requested, in the notice of removal, that this case be transferred to the Northern District of Illinois, pursuant to 28 U.S.C. § 1404. On April 27, 2009, plaintiff filed the instant motion to remand the action to state court, on the ground that subject matter jurisdiction is lacking. On May 6, 2009, defendant filed her opposition to that motion. On May 13, 2009, plaintiff filed its reply. The motion is fully submitted.

II. DISCUSSION

A. Legal Standard: Motion to Remand

"Generally, a defendant in an action pending in state court may remove that case to federal court only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)). "When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-CV-1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quotation omitted)). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citing *Shamrock Oil*

*& Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)); *accord Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006).

Section 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). As such, "any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co. v. Hous. Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)) (internal quotation omitted).

B. Federal Question Jurisdiction

The Court will first address defendant's invocation of federal question jurisdiction in this case. Specifically, the notice of removal asserts that "[a]t the time of the commencement of this action, Defendant had already filed a pending charge of Discrimination under the basis of Disability in violation of the Illinois Human Rights Act ("IHRA") and the Americans with Disabilities Act ("ADA") with the Illinois Department of Human Rights (dual filed with the Equal Employment Opportunity Commission) on March 5, 2009." (Notice of Removal ¶ 9.) A copy of this charge was attached to the notice of removal. (*See* Notice of Removal, Exh. B.)

A case may be filed in federal court "'when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see* 28 U.S.C. § 1331. A well-pleaded complaint may raise a federal question either by (1) asserting a federal cause of action, or (2) presenting state claims that "'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). "Ordinarily, a plaintiff is master of his complaint and may elect to proceed solely under state law even if federal remedies are available." *In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425, 1430 (2d Cir. 1993) (citing *Caterpillar*, 482 U.S. at 392; *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)), *overruled in part on other grounds by Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002). Accordingly, "[a] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar, Inc.*, 482 U.S. at 399. Moreover, the Second Circuit has acknowledged that, while exceptions to the "well-pleaded complaint rule" exist, such exceptions are narrowly limited, on the basis that "state and federal laws have many overlapping or even identical remedies" and because courts generally "respect a plaintiff's choice between state and federal forums." *In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d at 1430-31. The complete preemption doctrine, an "independent corollary" to the well-pleaded complaint rule, *Caterpillar*, 482 U.S. at 393, can "convert[ ] an ordinary state common law

3

complaint into one stating a federal claim[,]" *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987), but no such preemption is argued to apply to this case.

However, the well-pleaded complaint rule is subject to the following modification when the requested relief is for declaratory judgment:

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

*Public Serv. Comm'n v. Wycoff,* 344 U.S. 237, 248 (1952); *accord Fleet Bank, Nat. Ass'n v. Burke*, 160 F.3d at 886 (2d Cir. 1998) ("Moreover, and especially pertinent to the pending suit, a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff.").

In this case, defendant attempts to invoke the Court's federal question jurisdiction on the basis of Mustafa's potential discrimination claims against NSI under the ADA. In response, plaintiff argues that no question of federal law arises because only New York contract law is needed to address the claims in the complaint. The Court disagrees with plaintiff that "only New York contract law" applies – it is unclear whether New York or Illinois law applies as a threshold matter, and it is certainly clear that more than contract law is implicated, as set forth *infra* – and, instead, because plaintiff's request for declaratory relief seeks, *inter alia*, a declaration of no unlawful discrimination (including no unlawful discrimination under the ADA), federal question jurisdiction exists in this case.

First, it is plain from the face of the complaint that no causes of action under federal law are asserted by NSI in its complaint, and certainly not one that refers explicitly to the ADA. Setting aside the breach of contract claim, which is clearly a state law cause of action, what is left of the complaint to possibly establish federal question jurisdiction is the second cause of action, which is for a declaratory judgment. As noted above, in analyzing a claim for declaratory relief for federal question

jurisdictional purposes, the relevant inquiry is whether the asserted claim seeks in essence to defend against a threatened state cause of action or a federal cause of action, since it is the character of the threatened action that matters. *See Wycoff,* 344 U.S. at 242-43.

Here, plaintiff seeks declaratory relief regarding, *inter alia*, the validity of Mustafa's contract with NSI and seeking specific enforcement thereof. (*See* Compl. ¶ 20.) Mustafa's argument, which seems to be based on such requested relief, that federal question jurisdiction arises because "[p]laintiff's state action seeks to enjoin Mustafa's rights under federal laws prohibiting discrimination" is misplaced. This aspect of the declaratory and injunctive relief sought by plaintiff is a matter of contract law, since NSI alleges that Mustafa agreed to the release of any potential claims, including ones arising under the federal discrimination laws, pursuant to the settlement agreement. The threatened cause of action is thus not one arising under the ADA. Indeed, a mere impact on a federal issue or federal claim, as a collateral consequence of a state law cause of action, is not sufficient to meet the standard required for federal question jurisdiction. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

However, plaintiff's second cause of action further seeks a declaration to the effect that, *inter alia*, "Mustafa's termination was not based on unlawful discrimination" and that "even if NSI entered into an employment contract with Mustafa, Mustafa's employment with NSI was terminated for cause." (Compl. ¶ 20). This part of the declaratory relief NSI seeks is essentially a defense to the potential claims for age-based employment discrimination threatened by Mustafa, who submits that such claims arise, at least in part, under the ADA. Thus, Mustafa's federal cause of action is the "adverse action the declaratory judgment plaintiff apprehends[,]" *Fleet Bank, Nat. Ass'n*, 160 F.3d at 883, and federal question jurisdiction attaches. This result is consistent with the fact that the Court would have federal question jurisdiction over any ADA claim brought directly by Mustafa; although Mustafa is not the plaintiff here, because NSI's relief in declaratory form is essentially a defense to Mustafa's potential claims of discrimination, federal question jurisdiction must be decided on the basis of the actual claims for relief, rather than on defenses or counterclaims, however transmuted in declaratory judgment form. *See id.* at 886 ("As the defendants correctly note, [the well-pleaded complaint] rule requires a complaint invoking federal question jurisdiction to assert the federal question as part of the plaintiff's claim, and precludes invoking federal question jurisdiction merely to anticipate a federal defense[.]") (citations omitted); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984) (explaining that "what must arise under federal law is the cause of action in issue itself (regardless of to whom it belongs) as distinguished from some defense to it").

To the extent that plaintiff argues that Mustafa's potential claims regarding the alleged discrimination and, relatedly, whether or not Mustafa was terminated for cause, can be determined solely on the basis of New York state law or, for that matter, Illinois state law, the Court is unpersuaded by such an argument. The complaint makes plain, and plaintiff conceded as much during oral argument, that plaintiff, through the declaratory judgment, is attempting to obtain a declaration as to *all* of Mustafa's potential discrimination claims, including her potential federal claim under the ADA, and not only her

state law causes of action. If it is determined that the settlement agreement did not exist or is invalid, then the declaratory relief sought by plaintiff (*i.e.*, that no unlawful discrimination occurred) would require application of federal law, including the ADA, and a determination on Mustafa's potential claim arising thereunder. Thus, by framing the requested declaratory relief in a manner that seeks such extinguishment of all of Mustafa's threatened claims in connection with her former employment at NSI, NSI has created an avenue for this Court's federal question jurisdiction.

Accordingly, under these circumstances, the Court finds that federal question jurisdiction has been sufficiently demonstrated by the defendant. Even assuming *arguendo* that federal question jurisdiction does not exist, however, the Court determines below that, alternatively, diversity jurisdiction also exists in this case to prevent remand of this action to state court.

### C. Diversity Jurisdiction

It is axiomatic that federal courts only have diversity jurisdiction when there is complete diversity between the parties – that is, when all plaintiffs are citizens of different states from all defendants. *See* 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 88 (2005); *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998). In addition, in order for there to be diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Diversity jurisdiction is determined, furthermore, at the time of removal. *See Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570-71 (2004); *CenterMark Prop. Meriden Square, Inc.*, 30 F.3d at 301.

The parties do not dispute that there is complete diversity of citizenship between the plaintiff, a corporation organized under the laws of Delaware and having its principal place of business in New York, and the defendant, a citizen of Illinois. However, the parties dispute whether the requisite $75,000 minimum amount in controversy has been reached in this case.

Because Mustafa is seeking removal of the lawsuit to federal court, she "'has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount.'" *Mehlenbacher v. Arzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) (quoting *CenterMark Prop. Meriden Square, Inc.*, 30 F.3d at 301); *accord Lupo v. Human Affairs Intern., Inc.*, 28 F.3d 269, 274 (2d Cir. 1994). Moreover, "[t]o determine whether that burden has been met, we look first to the plaintiffs' complaint and then to [defendant's] petition for removal." *Mehlenbacher*, 216 F.3d at 296 (citation omitted). Finally, "[t]he Supreme Court has long held that separate and distinct claims raised by different plaintiffs may not be aggregated to satisfy the jurisdictional amount in controversy." *Id.* (citation omitted). As discussed below, the Court concludes that Mustafa has sufficiently demonstrated, to a reasonable probability, that the requisite jurisdictional amount in controversy has been met.

As an initial matter, the face of plaintiff's complaint does not set forth conclusively the exact amount of relief in dispute. Ordinarily, the plaintiff's good faith demand, as set forth on the face of the complaint, determines whether the claim meets the jurisdictional minimum amount in controversy. *See Scherer v. Equitable Life Assurance Soc'y of the U.S.*,

347 F.3d 394, 397 (2d Cir. 2003) ("We recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'") (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is made in good faith."). Although plaintiff does claim that "Mustafa and NSI entered into a verbal agreement on the following terms: (1) NSI agreed to pay Mustafa $16,000 in four (4) equal monthly installments of $4,000[,]" (Compl. ¶ 9), this amount only establishes the amount in controversy with respect to a part of plaintiff's second cause of action for declaratory judgment, namely, that portion which seeks a judgment declaring that the parties entered into a valid contract and requiring specific performance thereof. As set forth *infra*, plaintiff makes further demands for relief for which the amounts in controversy are not stated on the face of the complaint.

In addition, defendant's notice of removal also does not conclusively establish the amount in controversy. It only states in conclusory fashion that "[t]he amount in controversy in this action, exclusive of interest and costs, well exceeds $75,000." (Notice of Removal ¶ 6.) No facts are alleged in the notice of removal to support the jurisdictional amount. Thus, an examination of the face of the complaint and defendant's notice of removal yields no conclusive basis for diversity jurisdiction in this case.

Under such circumstances, "[w]here the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record." *CenterMark Prop. Meriden Square*, 30 F.3d at 305 (addressing motion to remand); *see also Mehlenbacher*, 216 F.3d at 296 (where record did not establish whether amount in controversy requirement was satisfied, remand required to determine whether removal of action was proper); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 527 & n.35 (S.D.N.Y. 2008) ("If the initial pleadings and petition for removal are inconclusive as to the value of the controversy, the court may look to the moving papers.") (quotations and citations omitted); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 72-73 (D. Conn. 2008) (looking beyond the pleadings where complaint and removal petition contain insufficient information to establish amount in controversy).[1] In this case, both parties have submitted affidavits and exhibits in support of their papers and, upon careful review of such evidence, the Court determines that the record amply supports a "reasonable probability" that the jurisdictional amount exceeds $75,000.

---

[1] This situation is distinguishable from *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 273-74 (2d Cir. 1994), where the defendant did not assert any amount in controversy or even raise the issue of diversity jurisdiction in its notice of removal and, thus, resort to information outside the pleadings was not warranted. Here, unlike in *Lupo*, the notice of removal alleges diversity jurisdiction and alleges that the amount in controversy exceeds the jurisdictional amount. *See, e.g., Mehlenbacher*, 216 F.3d at 298 (distinguishing *Lupo*); *Concorde Fin. Corp. v. Value Line, Inc.*, No. 03 Civ. 8020 (NRB), 2004 WL 287658, at *2 n.3 (S.D.N.Y. Feb. 11, 2004) (same).

Importantly, in this analysis, the amount in controversy "is calculated from the *plaintiff's standpoint*," *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) (emphasis added), rather than the viewpoint of any defendant or third party. *See, e.g., Leyse v. Domino's Pizza LLC*, No. 04-CV-2411 (HB), 2004 WL 1900328, at *3 (S.D.N.Y. Aug. 24, 2004) ("'The Second Circuit has held that the amount in controversy for jurisdictional purposes should be measured strictly from the plaintiff's perspective, without regard to the amount at stake for any other party.'") (quoting 15 MOORE'S FEDERAL PRACTICE – CIVIL § 102.109[3], at 102-99 (3d ed. 1998) (internal citations omitted)); *see also Alicea v. Circuit City Stores, Inc.*, 534 F. Supp. 2d 432, 435 (S.D.N.Y. 2008) ("[defendant's] post-removal argument that costs of compliance may be counted to meet the jurisdictional requirement also is not objectively reasonable because the Second Circuit had held, prior to the filing of this lawsuit, that the value of the claims is measured from the plaintiff's perspective"). Thus, the Court will proceed to examine the amounts at issue with respect to each claim asserted in the complaint.

Plaintiff's first claim for relief is a breach of contract claim, alleging that Mustafa breached a settlement agreement made with NSI. Specifically, NSI alleges in the complaint that the parties agreed that NSI would pay Mustafa $16,000 in exchange for Mustafa's release of any and all potential claims that she may have against NSI. The complaint further alleges that "[a]s a direct and proximate cause of such breach, NSI has been injured, and will continue to be injured in an amount to be determined at trial by (1) incurring attorneys' fees in defending the complaint that Mustafa filed . . . ; (2) being forced to expend its own valuable time defending the complaint that Mustafa filed . . . ; and (3) having potential judgment(s) entered against it in favor of Mustafa." (Compl. ¶ 18.) Because there is no evidence in the record from which the amount of these damages can be ascertained, this breach of contract claim, on its own, is not a sufficient basis for concluding that the jurisdictional minimum amount is met in this case.

However, the complaint also seeks relief beyond breach of contract. Plaintiff's second and last claim for relief is for a declaratory judgment. The complaint in this respect states:

> NSI seeks a declaration and final judgment in its favor declaring that (1) Mustsfa [sic] entered into a valid contract with NSI; (2) Mustafa must specifically perform under the terms of the contract, including accepting payment from NSI and withdrawing and/or refraining from filing any legal action against NSI in any federal or state administrative agency or court; (3) Mustafa's termination was not based on unlawful discrimination; (4) NSI never entered into an employment contract with Mustafa; and (5) even if NSI entered into an employment contract with Mustafa, Mustafa's employment with NSI was terminated for cause[.]

(Compl. ¶ 20.) "'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the

litigation.'" *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). Again, that amount is "calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972); *see also Am. Standard, Inc. v. Oakfabco, Inc.,* 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007) ("Because that amount is measured from the plaintiff's perspective, the value of the requested relief is the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted.").

Plaintiff argues that, in this case, "[i]f NSI prevails, NSI will pay, at most, $16,000. Thus, the amount in controversy is $16,000." (Pl.'s Mem. of Law, at 8.) Plaintiff's assertion may be correct if only the alleged settlement agreement were at issue. However, as expressly stated in its second cause of action, NSI's complaint encompasses declaratory relief that goes beyond the validity of the settlement agreement. Indeed, although plaintiff argues repeatedly that this matter is a simple breach of contract claim for $16,000, that description is incomplete. Plaintiff's counsel himself describes the declaratory relief sought in state court as the following:

> (1) that the parties entered into a valid settlement agreement; (2) that Defendant must specifically perform under the terms of the contract, including accepting payment from Plaintiff and withdrawing and/or refraining from filing any legal action against Plaintiff in any federal or state administrative agency or court; (3) that Defendant's termination was not based on unlawful discrimination; (4) that Plaintiff never entered into an employment contract with Defendant; (5) that even if Plaintiff entered into an employment contract with Defendant, Defendant's employment was terminated for cause; (6) any and all consequential and incidental damages Plaintiff suffers as a result of Defendant's breach; and (7) attorneys fees, interest, and costs.

(Macadangdang Aff., Exh. 12, Aff. of Joseph M. Labuda ¶ 6.) Thus, in the instant matter, plaintiff seeks declaratory relief establishing, *inter alia*, that defendant's termination was not based on unlawful discrimination and that, even if plaintiff entered into an employment contract with defendant, defendant's employment was terminated for cause. These claims implicate Mustafa's alleged employment contract with NSI, which is the subject of several related factual allegations in the complaint. (*See* Compl. ¶¶ 4-7 (alleging that Mustafa was employed by NSI as an at-will employee under no employment contract but that Mustafa asserted a claim for unpaid severance pay pursuant to an alleged employment contract and employment discrimination).) The alleged employment contract is also referenced in plaintiff's counsel's affidavit to the state court, in which he stated that the claims allegedly governed by the settlement agreement included "a claim for unpaid severance pay pursuant to an alleged employment contract, and

9

employment discrimination." (Macadangdang Aff., Exh. 12, Aff. of Joseph M. Labuda ¶ 13.) Thus, it is apparent that the second claim for relief involves amounts in controversy based not only on the settlement agreement, but also on the alleged employment contract, as well as damages for alleged discrimination.

With respect to the relief sought by plaintiff regarding the alleged employment contract and alleged discrimination, although plaintiff does not specify the amount of the suit's intended benefit to itself, the Court is able to determine the potential value of "the injury being averted" by the declaratory judgment on the basis of the evidence submitted by Mustafa. Here, the attorney affidavit filed in support of defendant's opposition states that the complaint seeks "an order declaring non-liability for Defendant's claim for unpaid severance in the amount [of] $80,000.00 [] and an injunction restraining Defendant from pursuing her disability discrimination complaint worth approximately $70,038.22 in lost wages, plus front pay, mental anguish pain and suffering damages, and potential punitive damages." (Macadangdang Aff. ¶ 22.) Defendant appends exemplar documentary proof of such an assertion to the affidavit. First, an affidavit of the defendant avers that her employment package included a first year base annual salary of $150,000 and included, *inter alia,* a six month severance pay arrangement for separation without cause. (Macadangdang Aff., Exh. 1, Aff. of Mustafa ¶¶ 4-6, 11.) She further avers that the employment package included a structured bonus arrangement and that she believes she is entitled to $80,000 for the six months severance, plus at least $16,000 in bonus compensation pursuant to the terms of her employment agreement with NSI. (Macadangdang Aff., Exh. 1, Aff. of Mustafa ¶¶ 4-5, 11.) Furthermore, defendant has appended documents indicating that her salary was for $150,000 (Macadangdang Aff., Exh. 4), e-mail discussions about Mustafa's employment package, including discussion of a "guaranteed increase" of her base annual salary to $160,000 after one year of service (Macadangdang Aff., Exhs. 5-7), an earnings statement (Macadangdang Aff., Exh. 8), and a charge of discrimination filed on March 5, 2009 with the Illinois Department of Human Rights (Macadangdang Aff., Exh. 11). On the basis of this evidentiary support, the Court finds that an amount in controversy exceeding the statutorily required minimum is supported by "competent proof" and justified by "a preponderance of evidence." *CenterMark Prop. Meriden Square*, 30 F.3d at 305. As the aforementioned allegations make apparent, it is possible, for example, that the Court will decide parts (a) and (b) of NSI's requested declaratory relief in defendant's favor – *i.e.*, that the settlement agreement is invalid and unenforceable – and decide parts (3) - (5) in NSI's favor; this, in turn would permit NSI to avoid the potential payout of $80,000.00 in alleged unpaid severance, plus disability discrimination worth approximately $70,038.22. Such "injury being averted" is rightly a monetary benefit that may accrue to plaintiff as a result of this lawsuit and should be considered in assessing the amount in controversy for jurisdictional purposes.[2] *See*

---

[2] Plaintiff counters that various e-mails discussing the alleged settlement agreement indicate that defendant valued the totality of her claims at no more than $50,000. First, it is questionable as to whether these e-mails may be properly considered by the Court as evidence of the value of plaintiff's claims or the amount in controversy. *Compare Kamat v. Kurtha*, No. 05 CV 10618 (KMW) (THK), 2007 WL 188738, at *2 n.3 (S.D.N.Y. Jan. 22, 2007) ("Defendant has attached copies of letters memorializing settlement discussions to his

*Kheel*, 457 F.2d at 49.

Accordingly, defendant has satisfied her burden of demonstrating a reasonable probability that the benefit potentially accorded to plaintiff and/or injury averted by the grant of the requested declaratory judgment exceeds the $75,000 jurisdictional minimum, in satisfaction of 28 U.S.C. § 1332 and, therefore, this Court may properly exercise diversity jurisdiction over this action.[3]

---

objections. He states that these discussions support his argument that Plaintiff does not expect to recover more than $20,000. Because '[e]vidence [of settlement discussions] is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount,' the letters are irrelevant to the calculation of the amount in controversy.") (citing Fed R. Evid. 408(a)) *with Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 200-01 (D. Conn. 2004) ("Although the Second Circuit has not addressed this issue, most courts have held – and this Court agrees – that § 1446(b) [governing removal] is not limited to papers filed in the litigation and that the reference to 'other paper' in the statute can include pre-removal correspondence between the parties, including, as here, settlement offers.") (collecting cases). Even if they may be considered, however, the Court finds that defendant has proffered sufficient evidence establishing that her claims are valued at more than the statutory minimum to a reasonable probability, regardless of the values discussed with respect to the settlement agreement. *See Mehlenbacher*, 216 F.3d at 296.

[3] In connection with the motion to remand, plaintiff also seeks an award of costs and expenses, including attorneys' fees. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *see also Circle Indus. USA Inc. v. Parke Constr. Group, Inc.*, 183 F.3d 105, 109 (2d Cir. 1999) (stating that the goal of this provision "is to deter improper removal . . . . While the simplicity of [the removal] procedure facilitates removal, it also exposes a plaintiff to the possibility of abuse, unnecessary expense and harassment if a defendant removes improperly, thereby requiring plaintiff to appear in federal court, prepare motion papers and litigate, merely to get the action returned to the court where the plaintiff initiated it."). Because the Court has found the removal to be proper, there is no basis for plaintiff's motion for costs and expenses and, thus, the motion is denied. Plaintiff also argues that the choice of law provision in the alleged settlement agreement precludes removal because Mustafa waived her right to remove any dispute to federal court. Specifically, the clause to which plaintiff refers is one in which "[t]he parties agreed that any dispute surrounding the settlement agreement that they entered into would be governed by New York state law." (Pl.'s Reply, at 5.) As conceded by plaintiff during oral argument, this is not a forum selection clause, but rather is a choice of law provision; even assuming that defendant agreed that New York law would govern this dispute, there is no reason why that should limit defendant's ability to litigate this dispute in New York federal court. *See Creative Socio-Medics, Corp. v. City of Richmond*, 219 F. Supp. 2d 300, 307 (E.D.N.Y. 2002) ("However, Richmond's reliance on the choice of law provision is misplaced. 'Choice of law questions are significantly different from questions of jurisdiction.' Choice of law provisions, as opposed to forum selection clauses, 'have minimal jurisdictional implications.'") (quoting *Alan Lupton Assocs., Inc. v. Northeast Plastics, Inc.*, 105 A.D.2d 3, 8 (N.Y. App. Div. 1984)). In any event, "[a] forum-selection clause, although it can have jurisdictional consequences, does not oust a district court of subject-matter jurisdiction." *Karl Koch Erecting Co., Inc. v. N.Y. Convention Ctr. Dev. Corp.*, 838 F.2d 656, 658 (2d Cir. 1988).

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion to remand for lack of federal jurisdiction is denied. Plaintiff's motion for costs and expenses is also denied.

The parties shall participate in a telephone pre-motion conference on September 1, 2009 at 4:00 p.m. in order to discuss defendant's motion to transfer venue to the Northern District of Illinois. At the time of the conference, counsel for the defendant shall initiate the call and, with all parties on the line, contact Chambers at (631) 712-5670.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 20, 2009
Central Islip, New York

* * *

The attorney for plaintiff is Jamie Scott Felsen of Milman Labuda Law Group, PLLC, 3000 Marcus Avenue, Suite 3W3, Lake Success, New York 11042. The attorneys for defendant are Alan G. Serrins and Ann B. Macadangdang of Serrins & Associates, LLC, 233 Broadway, 18th Floor, New York, New York 10279.

---

Moreover, to the extent that NSI attempts to argue that the provision requires remand due to waiver of any federal jurisdiction, there is no indication that this provision incorporates any language indicating that the specified jurisdiction is New York state court and certainly none indicating that such jurisdiction is *"exclusive," John Boutari & Son Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 52-53 (2d Cir. 1994) (emphasis added), and, therefore, no remand to state court is necessitated. *See Phoenix Global Ventures, Inc. v. Phoenix Hotel Assocs., Ltd.*, No. 04 Civ. 4991 (RJH), 2004 WL 2360033, at *6 (S.D.N.Y. Oct. 19, 2004) ("Generally, a forum-selection clause will not bar litigation in a federal forum in the absence of further language indicating the parties' intent to establish exclusive jurisdiction in state court.").